# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| KEVIN JACKSON, | : | Case No. 3:18-cv-00159 |
| --- | --- | --- |
| Plaintiff, | : | |
| | : | |
| vs. | : | District Judge Walter H. Rice |
| | : | Magistrate Judge Sharon L. Ovington |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[1]

## I. Introduction

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a disability, among other eligibility requirements. A "disability" in this context refers to "any medically determinable physical or mental impairment" that precludes an applicant from engaging in "substantial gainful activity." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

Finding himself unable to work due to bipolar disorder, Plaintiff Kevin Jackson applied for Disability Insurance Benefits and Supplemental Security Income. He asserted that starting on August 1, 2013 and continuing thereafter, he had been under a disability.

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

Administrative Law Judge (ALJ) Mark Hockensmith disagreed. He concluded that Plaintiff was not under a disability and denied Plaintiff's applications for benefits. (Doc. #6, *PageID* #s 168-77).

Plaintiff brings the present case contending (in part) that ALJ Hockensmith erred when evaluating the medical source opinions and medical evidence. Plaintiff seeks a remand of this case for payment of benefits or, at a minimum, for further proceedings. The Commissioner finds no error in the ALJ's decision and asks the Court to affirm rather than remand.

**II.     Background**

Plaintiff was twenty-seven years old on his asserted disability onset date. He has the equivalence of a high-school education and worked in the past as a fast-food worker and a cook.

A Social Summary Report on September 9, 2014 from the Montgomery County Department of Job and Family Services identified Plaintiff's "current disabling medical conditions" as "Severe Bipolar" and Depression/Anxiety." *Id*. at 44, 820. His accompanying symptoms—specifically those that prevented him from working—were identified as "unable to concentrate, rash emotional changes, mental illness." *Id*.

Plaintiff testified during the hearing ALJ Hockensmith held that he had been in psychological treatment all his life, since he was a child. *Id*. at 204. He described his bipolar symptoms as follows:

> Well, when I'm depressed, I'm in bed all the time. I'm – I want nothing to do with anybody, I don't do anything. I don't cook, I don't clean, I don't eat. I don't do anything.

> Now, when I'm mania, I'm all over the place. I am yelling, I'm screaming, I'm hurting myself, I'm feeling hot. I'm feeling, I just feel crazy. I don't know how to explain it properly without just using the word crazy.

*Id*. at 206-07.

His medications were often changed. He vividly explained, "They've been guinea pigging me and for the rest of my life." *Id*. at 207.

Plaintiff described himself as "a very loner kind of a person." *Id*. at 198. He said he had a few friends but mostly communicated with them online. *Id*. "Very occasionally…," he will eat out with his friend Lucas, "and he's a loner too." *Id*. Plaintiff is in constant contact with his mother but does not talk with his father or any other family member. *Id*. at 198-99.

The administrative record documents Plaintiff's history of extensive mental-health treatment at South Community Mental Healthcare. *See*, *e.g.*, *PageID* #s 644-754, 764-818, 912-1140, 1142-1284. Plaintiff testified that he either saw one of his case managers every day or they called him. *Id*. at 205. He characterized his treatment program as "very intensive." *Id*. His case managers made sure his medications needs were met and also assisted with his other needs. *Id*.

Plaintiff acknowledged that he had past problems with heroin use:

> [I]t all started like, 2012. Like, I didn't really start doing drugs until then I was trying to self-medicate myself …. Here we are now, I mean, it's 2016. I was on it a very long time, but it was like periods of time. Because I had a lot of clean time too in between all of that. I've had six months clean in between that, about a year and a half ago before this ….

*Id*. at 199.

Plaintiff estimated that he had been fired from at least eighteen jobs for being too unpredictable. *Id*. at 190, 202, 206. That is eighteen job terminations by only age thirty. *Id*. at 202. A state agency work-history tool is consistent with this. *See id*. at 610. Plaintiff testified that he had never been able to hold a job for longer than six months, and his longest stint of employment was with a fast-food restaurant. *See id*. at 170, 203. In 2016, he was terminated from his fast-food job after suffering nervous breakdowns and, ultimately, being taken to the hospital in an ambulance after his coworkers called the police. *Id*. at 192-93. Plaintiff was able to get a job in July 2016 at another fast-food restaurant because his friend is the boss there. *Id*. at 194. However, there were times when he had to call in sick or leave early because he was trying to hurt himself. *Id*. at 195.

Plaintiff told ALJ Hockensmith that his caseworkers at South Community recommended he work on a part-time basis. *Id*. at 193.

As noted above, Plaintiff challenges the ALJ's weighing of the opinions by examining psychologist Katherine Myers, Psy.D. Dr. Myers met with and evaluated Plaintiff in January 2015 at the request of the state agency. *Id*. at 756-62. She noted that Plaintiff told her he was applying for disability for several reasons. He stated, "I'm diagnosed Bipolar … always had ups and downs … can never hold a job because of my ups and downs. I do well one week then crying spells. Get let go … they tell me I'm not a good fit." *Id*. at 756 (ellipsis in original). Dr. Myers noted that Plaintiff "appeared to be a reliable historian." *Id*.

Plaintiff also told Dr. Myers that he had last used marijuana a month before meeting with her—"he took a couple of hits." *Id*. at 758. He had last regularly used marijuana in

4

February 2014 (this was about five months before he asserted disability onset date). He explained that he was regularly using marijuana in February 2014 in an attempt to self-medicate. Dr. Myers also reported, "He stated that after he lost his last job he used heroin intravenously for about 1-2 months. He is now getting treatment with naltrexone. He has been referred for substance abuse treatment. He said he received group counseling at South Community also." *Id.*

Dr. Myers examined Plaintiff and diagnosed Bipolar I Disorder; Generalized Anxiety Disorder; and Opioid Use Disorder, mild, on maintenance therapy. *Id.* at 760-61. She opined that he was likely to have some difficulties with job-related tasks due to his mental-health problems. *Id.* at 761. His poor frustration tolerance would likely negatively impact his ability to carry out instructions on some days. Dr. Myers further thought Plaintiff was somewhat likely to show a pattern of time periods away from work for mental-health reasons. His fluctuating moods negatively impacted his ability to maintain attention and concentration and his ability to put forth consistent task persistence. Dr. Myers concluded that Plaintiff's shifting moods would likely cause some impairment in stress tolerance and that he would likely perform best in situations where he could work independently rather than with the general public. *Id.*

Plaintiff also relies on the opinions of his treating therapists Yvonne Luneke, PA-C and David Johnson, MS, ED, LPCC. They completed a Mental Impairment Questionnaire in April 2016. *Id.* at 909-11. They noted that Jackson met with Luneke every few weeks, or sooner if needed. *Id.* at 909. He also received weekly home visits from his therapist, and met with his program provider for pharmacological management.

5

Luneke and Johnson diagnosed Plaintiff with Bipolar I Disorder, recurrent and severe without psychotic features; Generalized Anxiety Disorder; Cannabis Dependence with physiological dependence; and opioid dependence with physiological dependence. They identified his many signs and symptoms to be poor memory; appetite disturbance with weight change; sleep disturbance; mood disturbances; emotional lability; substance dependence; feelings of guilt/worthlessness; difficulty thinking or concentrating; suicidal ideation or attempts; social withdrawal or isolation; blunt, flat, or inappropriate affect; illogical thinking or loosening of associations; decreased energy; manic syndrome; and generalized persistent anxiety. *Id*. They reported, "Mr. Jackson has a severe and persistent mental illness, which requires daily medications in reducing mood swings, depression, and suicidal ideations." *Id*. at 910. They noted he had a history substance abuse and two psychiatric inpatient hospitalizations for suicidal ideations. *Id*. They also said that Plaintiff has been having difficulty with medication adherence. Client is having difficulty adhering to medication-assisted treatment for opioid dependence as evidenced by not taking Naltrexone as prescribed." *Id*. Luneke and Johnson painted a dire picture of Plaintiff's prognosis:

> Client's prognosis is guarded, [he] will need to maintain current medication regimen, avoid use of opioids, cannabis[;] supportive, part-time employment may be appropriate, as an example of sober living and to avoid decompensation of symptoms that may lead to … hospitaliz[ation], again, if [he] is unable to manage mood swings or expresses desire to harm himself and/or others.

*Id*.

Luneke and Jackson thought that Plaintiff would be absent from work about twice per month due to his impairments or treatment. *Id*. And they opined that Plaintiff was

6

markedly impaired in maintaining social functioning; moderately impaired by episodes of decompensation, moderately impaired in concentration, persistence, or pace; and slightly restricted in his activities of daily living. *Id*. at 911.

**III.   Standard of Review and ALJ Hockensmith's Decision**

Review of ALJ Hockensmith's decision considers whether he applied the correct legal standards and whether substantial evidence supports his findings. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance…." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see Lawson v. Comm'r of Soc. Sec.*, 3:17cv119, 2018 WL 3301421, at *4 (S.D. Ohio 2018) (Ovington, M.J.), *Report & Recommendations adopted*, 2018 WL 3549787, at *1 (S.D. Ohio  2018) (Rice, D.J.).

ALJ Hockensmith reviewed the evidence and evaluated Plaintiff's disability status under a each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]  His more pertinent findings began at steps two and three where he found that Plaintiff had severe impairments—bipolar disorder, anxiety disorder, cannabis and opioid dependence disorders—and that his impairments did not automatically qualify him for benefits. (Doc. #6, *PageID* #s 171-73).

At step four, the ALJ concluded that the most Plaintiff could do (his residual functional capacity, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002)),

---

[2] Further citations to social security regulations will identify the pertinent Disability Insurance Benefits regulation with full knowledge of the corresponding Supplemental Security Income regulation.

7

consists of any physical work with six limitations:

> The claimant … [is] (1) limited to simple, routine tasks: (2) in a static work environment with few changes in routine: (3) no contact with public: (4) occasional interaction [with] coworkers and supervisors: (5) no fast paced work or strict production quotas: (6) no tandem or collaborative work.

*Id*. at 173.

The ALJ concluded at step five that there were plenty of full-time jobs Plaintiff could do (cleaner, packager, laundry laborer). These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability.

## IV.  **Discussion**

Plaintiff contends that the ALJ failed to reasonably weigh the opinions provided by Luneke and Johnson, and Dr. Myers.

The ALJ placed moderate weight on the opinions provided by Plaintiff's treating therapists Luneke and Johnson. He found their opinion about Plaintiff's difficulty in adhering to the use of medication consistent "with evidence in the South Community records and with his heroin relapses." *Id*. at 175. He did not give much weight to their opinions that Plaintiff had marked limitations in social functioning for reasons he had stated previously in his decision. *Id*.

The ALJ placed moderate, not great, weight on Dr. Myers' opinions because "[h]er assessment is essentially consistent with the evidence of the claimant's treatment records, though it is rather vague in explaining actual functional limitations…." *Id*.

Social Security Regulations require ALJs to adhere to certain standards when weighing medical opinions. "Key among these is that greater deference is generally given

8

to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule." *Rogers,* 486 F.3d at 242 (citations omitted). The rule is straightforward:

> Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record."

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting in part 20 C.F.R. § 404.1527(c)(2)); *see Gentry*, 741 F.3d at 723.

If the source's physician's opinion is not controlling, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544). These factors also govern the ALJ's review of non-treating medical sources' opinions. *See Gayheart*, 710 F.3d at 376.

Plaintiff argues that the ALJ erred by not addressing Luneke and Johnson's opinion that he would be absent from work twice per month due to his impairments and may be able to perform part-time work at most. Plaintiff also contends that substantial evidence fails to support the ALJ's reasons for discounting Dr. Myers' opinions and that Dr. Myers' opinions are consistent with other evidence of record.

The Commissioner responds that the ALJ did not ignore Luneke and Johnson's opinion about Plaintiff twice monthly work absences. The ALJ addressed this, according to the Commissioner, by "discussing 'the reservations by Dr. Myers and by [Plaintiff's] mental

9

health counselors regarding possible work attendance problems[.]'" (Doc. #12, *PageID* #1345 (quoting *PageID* #174) (Commissioner's brackets)).

The Commissioner missteps by quoting only part of the sentence. The full sentence reads, "Despite the reservations by Dr. Myer's (Exhibit 3F) and by his mental health counselors (Exhibit 11F) regarding possible work attendance problems, he said that he had only called in sick once since July 2016 and had left work only wants [sic] since July 2016." (Doc. #6, *PageID* #174). The ALJ did not cite to a page in the administrative record where Plaintiff said he only called in sick once, or left work once, since July 2016. This is a significant omission because Plaintiff testified during the ALJ's hearing in November 2016 that there were "some times" when he had to call in sick because he was trying to hurt himself. *Id*. at 195. *Some times* being plural means that Plaintiff told the ALJ he had missed work more than once since July 2016. *See id*. Perhaps the ALJ was referring to something Plaintiff told Dr. Myers—again, the lack of citation leads to guesswork—but this can't be correct because Dr. Myers interviewed Plaintiff in January 2015 before he started work in July 2016. In the absence of a citation supporting the ALJ's finding about Plaintiff's single absence from work after July 2016, and in the presence of contrary testimony by Plaintiff, substantial evidence does not support this finding by the ALJ. And it therefore follows that the ALJ did not reasonably evaluate Dr. Myers' opinion about Plaintiff's twice monthly work absences.

Plaintiff is also correct that Dr. Myers' opinion about his twice monthly work absences is not *vague*, as the ALJ believed. It is instead consistent with the fluctuating nature of his Bipolar I Disorder that is well documented in his treatment notes from South

10

Community Behavioral and hospital records, *see id*. at 768-818, 862-908, 912-940, 1142-1284, and is found in Dr. Myers' description of his mental status and her diagnosis of Bipolar I Disorder and Generalized Anxiety Disorder in her consultative-examination report. *Id*. at 759-60. Dr. Myers thought that Plaintiff was somewhat likely to show a pattern of periods of time away from work for mental health reasons. *Id*. at 761. This is not *vague*, as the ALJ believed, given the fluctuating nature of Plaintiff's bipolar symptoms as documented in his treatment records from South Community Behavioral and records from his psychiatric hospitalizations. *See, e.g.*, *PageID* #s 862-908. And "bipolar disorder is episodic," *see Kangail v. Barnhart*, 454 F.3d 627, 629 (7th Cir. 2006), an inherent feature of this disorder that further supports Myers' opinion. This is also something the ALJ did not consider when weighing her opinion.

The ALJ notably failed to cite substantial evidence that conflicts with Dr. Myers' or Luneke and Johnson's opinion that Plaintiff would show a pattern of periods of time away from work as opined by the treating therapists and Dr. Myers. The ALJ, for example, mentioned that Plaintiff "worked well at a Korean restaurant for a significant period of time" with no citation to any supporting evidence that would show that he worked "for a significant period of time." *Id*. at 174. If the ALJ is referring to Plaintiff's work for Yu & Kims Enterprises LLC (a company that owned at least one Korean restaurant) this occurred in 2011 well before his disability onset date. He then worked for Mimi's Café until returning to work for Yu & Kims for a brief period in 2012, when he earned only $483.27. *Id*. at 533-34. The ALJ also overlooked or ignored the fact that Plaintiff was fired from approximately eighteen jobs by age thirty and has never been able to hold a full-time job for

11

any significant length of time. *Id.* at 520-536, 560, 610. And even if Plaintiff had held one job for a significant period of time, the ALJ failed to consider how this measures up to his eighteen job terminations over the years. "[A] substantiality of evidence evaluation does not permit a selective reading of the record." *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 641 (6th Cir. 2013); *see Minor v. Comm'r of Soc. Sec.*, 513 F. App'x 417, 435 (6th Cir. 2013) (reversing where the ALJ "cherry-picked select portions of the record" rather than doing a proper analysis); *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000) ("ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position.").

Luneke and Johnson's opinion is also supported by their own clinical findings. Specifically, they diagnosed Bipolar I Disorder, recurrent and severe, and identified several clinical signs and symptoms, including: poor memory; appetite disturbance with weight change; sleep disturbance; mood disturbances; emotional lability; substance dependence; feelings of guilt/worthlessness; difficulty thinking or concentrating; suicidal ideation or attempts; social withdrawal or isolation; blunt, flat, or inappropriate affect; illogical thinking or loosening of associations; decreased energy; manic syndrome; and generalized persistent anxiety. *Id*. at 909-11. They also cogently explained that Plaintiff "has a severe and persistent mental illness, which requires daily medications in reducing mood swings, depression, and suicidal ideations." *Id*. They noted he has a history of psychiatric inpatient hospitalization. *Id*. Moreover, they considered Plaintiff's difficulty in adhering to his medication regimen and drug relapses, and they still opined that he would be absent from work two times per month and that he could, perhaps, hold a part-time job at best. *Id*. Their

12

opinion is also consistent with the extensive mental-health treatment notes and his history of psychiatric hospitalization. *See id*. at 622-754, 764-818, 912-1140, 1142-1284.

The ALJ found that Plaintiff's "activities of daily living are not consistent" with disability, *id*. at 174, but this, too, is unsupported by substantial evidence. Specifically, Plaintiff's ability to produce music or communicate online for a few hours a day is not equivalent to full-time competitive employment. Likewise, his ability to play video games or watch a movie with a friend "once or twice per week" is not comparable to full-time competitive employment. *Id*; *see* Soc. Sec. Ruling 96-8p, 1996 WL 374184 (defining residual functional capacity as an assessment of the individual's ability to do sustained work-related mental activities in a work setting on a regular and continuous basis, meaning "8 hours a day, for 5 days a week, or for an equivalent work schedule."); *see also* 20 C.F.R. § 404.1572(c) ("Generally, we do not consider activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs to be substantial gainful activity.")

In short, there is simply no substantial evidence that contradicts the opinions provided by Luneke, Johnson, and Dr. Myers regarding Plaintiff's absences and time away from work for mental-health reasons. Their opinions are not speculative but rather based on Plaintiff's documented history of fluctuating mental-health symptoms and his historic mental problems—caused by his mental impairments—to hold a full-time job for any significant period of time.

Accordingly, for the above reasons, Plaintiff's Statement of Errors is well taken.

## V. Remand

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

This is an unusual case that requires a remand for further proceedings even though the evidence of disability is strong while contrary evidence is lacking. First the evidence: The ALJ placed more weight on the opinions of Luneke, Johnson, and Dr. Myers than he placed on the opinions of the record-reviewing medical sources. (Doc. #6, *PageID* #175).

14

There is no other medical source opinion of record that conflicts with the opinions of Luneke, Johnson, and Dr. Meyers. Dr. Myers' opinion that Plaintiff "is somewhat likely to show a pattern of periods of time away from work for mental health reasons," *id*. at 761, is consistent with and supports Luneke and Johnson's opinion that they anticipate Plaintiff's mental impairment would cause him to be absent from work two times a month, *id*. at 910. The vocational expert told the ALJ that no jobs are available to a hypothetical person with Plaintiff's limitations who is absent from work or leaves work early twice a month due to mental impairments. *See id*. at 210.

Despite such evidence, there has been no administrative decision about whether Plaintiff's episodic substance abuse is "a contributing factor material to the Commissioner's determination that [he] is disabled." 42 U.S.C. § 423(d)(2)(C).

> The Commissioner's regulation explains that "[t]he key factor" in determining whether drug or alcohol abuse is material in a given case is whether the claimant would still be disabled if he or she stopped using drugs or alcohol. 20 C.F.R. § 404.1535. Substance abuse is not considered until the Commissioner first makes a finding that a claimant is disabled. *See id.* ("If we find that you are disabled ... we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability.").

*Gayheart*, 710 F.3d at 380. The ALJ did not examine whether Plaintiff's substance abuse was material probably because the ALJ found that Plaintiff was not under a disability. Some of his drug abuse occurred after his disability onset date. *E.g.,* Doc. #6, *PageID* #s 196, 878, 910-11, 943, 963, 1052, 1151, 1153. To Plaintiff's credit, the record also reveals that he has often been fully engaged with his mental-health and substance-abuse treatment, and that he has made progress at times, such as living independently without abusing narcotics or marijuana.

15

Although there is strong evidence that Plaintiff is under a disability and contrary evidence is lacking, a remand for an award of benefits is not warranted due to the absence of a determination at the administrative level of whether Plaintiff's substance abuse is "a contributing factor material to the Commissioner's determination that [he] is disabled." 42 U.S.C. § 423(d)(2)(C). However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration for this determination. *See id.; see also Gayheart*, 710 F.3d at 380.

### IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability finding be vacated;

2. A finding be made that Plaintiff Kevin Jackson is under a "disability"; yet, rather than an award of benefits at this time, this matter be **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Report and Recommendations, and any decision adopting this Report and Recommendations; and

3. The case be terminated on the Court's docket.

August 26, 2019　　　　　　　　　　　　　　　　*s/Sharon L. Ovington*
　　　　　　　　　　　　　　　　　　　　　　　Sharon L. Ovington
　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).